OPINION
 I. INTRODUCTION
This matter comes before the court for decision following trial on consolidated cases
TC 4947, TC 4948, and TC 4949. Plaintiff (taxpayer) alleges that Defendant (the department) wrongly denied taxpayer refunds for each of the tax years 1995 through 2000. Taxpayer further alleges that the department wrongly determined taxpayer's state personal income tax liability for the tax years 1995, 1996, 1999 and 2000. The department has filed a counterclaim for *Page 2 
deficiencies in the tax years 1995, 1996, 1999 and 2000 and penalties under ORS 305.992.[1]
 II. STATEMENT OF FACTS
Taxpayer was a shareholder in MOL Enterprises, Inc. (MOL). From 1976 to 1981, taxpayer worked on the behalf of MOL to secure contracts to buy and sell Rhesus monkeys. (Ptf's Ex 25 at 2.) In connection with this work, MOL remitted substantial sums of money to taxpayer under the condition that such sums be used only for "legitimate expenses and payments necessary to obtain purchases and sales of Rhesus monkeys." (Id. at 3.) In 1983, MOL sued taxpayer to recover amounts that MOL claimed taxpayer had improperly spent. (Id.) On October 12, 1983, the Multnomah County Circuit Court entered judgment against taxpayer in the amount of $282,783.31. (Ptf's Ex 30 at 2.) Taxpayer surrendered 333 shares of class "A" and 100 shares of class "B" stock in MOL (the MOL stock) in partial satisfaction of the judgment. (Ptf's Ex 33.) The MOL stock was sold at sheriff's sale on January 6, 1984. (Ptf's Ex 33.) Taxpayer estimates the loss he suffered as a result of the seizure and sale of the MOL stock at $397,500.
On September 19, 2008, the department received taxpayer's original state income tax returns for the tax years 1994, 1995, 1996, 1997, 1998, 1999, and 2000. (Def's Ex A at 66, 73, 127.) On the returns for each of the tax years 1995 through 2000, taxpayer reported a federal Adjusted Gross Income (AGI) that reflected a "carryover casualty/theft loss" arising from a "Casualty or Theft Gain or Loss" in the amount of $397,500 that taxpayer claimed on a Schedule C (Form 1040) "Profit or Loss from Business" attachment to taxpayer's 1994 federal income tax return. (Ptf's Ex 5 at 3.) Taxpayer claimed refunds for each of the tax years 1995 through 2000. (Def's Ex A at 1-30.) *Page 3 
The department denied taxpayer's refund claims. (Def's Ex A at 45-56, 73, 122.) Taxpayer appealed the refund denials to the Magistrate Division. The Magistrate Division held that ORS 314.415(2)(a) barred any refund to taxpayer for the years in question. During the Magistrate Division proceedings, the department conducted audits for the taxable years 1995 through 2000 and disallowed the carryover casualty/theft losses. (Def's Ex A at 109-10.) The department then issued notices of deficiencies to taxpayer for tax years 1995, 1996, 1999, and 2000. (Ptf's Exs 8-11.)
Prior to trial in the Regular Division, taxpayer paid the deficiencies. (Testimony of Bert Viecelli, Trial, Sept 21, 2010, 10:05.) At trial, taxpayer requested refunds of the amounts paid in addition to his initial refund claims. (Id.)
 III. ISSUES
(1) Is taxpayer entitled to refunds for the tax years 1995 through 2000?
(2) Was taxpayer subject to additional state personal income tax liability for the tax years 1995, 1996, 1999, and 2000?
(3) Is taxpayer subject to penalties for late filing under ORS 305.992?
 IV. ANALYSIS
A. Taxpayer's Original Claims for Refunds
On September 19, 2008, taxpayer filed Oregon income tax returns for the tax years 1995 through 2000 and claimed refunds for each of those years. The Magistrate Division held that taxpayer's claims for refunds were barred by operation of ORS 314.415. This court agrees.
Under ORS 314.415(2)(a), "if [taxpayer's] original return is not filed within three years of the due date, excluding extensions, of the return, the department may allow or make a refund only of amounts paid within two years from the date of the filing of the claim for refund." Here, *Page 4 
taxpayer filed his original tax returns for the years 1994 through 2000 roughly eight years after the due date for the most recent of those tax returns. Taxpayer has introduced evidence showing that he had requested an extension of the due date for his 1992 federal personal income tax return from the Internal Revenue Service. (Ptf's Ex 24.) However, nothing in the record indicates that taxpayer requested or was granted extensions for any of the tax years in question. Thus, even if taxpayer was entitled to claim a "casualty/theft loss" on his 1994 income tax return, the department was not authorized to refund any amounts paid before September 19, 2006. As a consequence, to the extent taxpayer seeks refunds of amounts paid by taxpayer before September 19, 2006, taxpayer's refund claims for the tax years 1995, 1996, 1997, 1998, 1999, and 2000 are barred by operation of ORS 314.415.[2]
B. The Counterclaims of the Department
The department has filed counterclaims against taxpayer for deficiencies in 1995, 1996, 1999, and 2000. The department also seeks penalties against taxpayer under ORS 305.992 for
failure to file tax returns for three or more consecutive years. Prior to trial, the department issued notices of deficiencies to taxpayer for each of these years. Taxpayer paid the deficiencies and at trial requested refunds of the amounts paid.
1. Taxpayer's Tax Liability for the TaxYears 1995, 1996, 1999, 2000
The court first addresses whether the department correctly determined that taxpayer was subject to additional state income tax liability for each of the years 1995, 1996, 1999, and 2000. To the extent that the department improperly determined taxpayer's tax liability for these tax years, taxpayer is entitled to refunds of the amounts taxpayer paid to satisfy the notices of *Page 5 
deficiencies issued to taxpayer by the department. ORS 305.419(1).
Calculating a taxpayer's state personal income tax liability requires a taxpayer to accurately report the taxpayer's Oregon taxable income. Taxpayer's Oregon taxable income is "the taxable income as defined in subsection (a) or (b), section 63 of the Internal Revenue Code." ORS 316.022(6).[3] Taxpayer did not elect to itemize his deductions in any of the years at issue. (Def's Ex A at 1-30.) Therefore, taxpayer's federal taxable income consisted of taxpayer's AGI minus the standard deduction and the deduction for personal exemptions. IRC § 63(b).
Taxpayer claimed a "carryover casualty/theft" loss in each of the years at issue as a deduction in determining his AGI. (Def's Ex A at 1-30.) This reduced the federal and Oregon taxable income reported by taxpayer for each of the taxable years 1995 through 2000. The carryover losses arose what taxpayer characterized as a $397,500 loss on a schedule C "Profit or Loss from Business" attachment to his 1994 federal income tax return. (Ptf's Ex 5 at 3.) Taxpayer's schedule C attachment refers the reader to an attached federal form 4684 that describes the seizure and sale of the MOL stock as a casualty or theft of business or income-producing property and quantifies taxpayer's loss at $397,500. (Ptf's Ex 5 at 5.)
IRC section 165(a) provides a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction for losses is limited to:
 "(1) losses incurred in a trade or business;
 "(2) losses incurred in any transaction entered into for profit, though not connected to a trade or business; and
 "(3) * * * losses of property not connected with a trade or business or a *Page 6 
transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft."
IRC § 165(c). At trial, taxpayer did not argue that the seizure of the MOL stock was a loss "incurred in a trade or business" or in a "transaction entered into for profit."
Rather, taxpayer characterized the seizure and sale of the MOL stock as a theft. (Testimony of Bert Vieceli, Trial, Sept 21, 2010, 9:50.)[4] Therefore, the court confines its inquiry to whether the seizure and sale of the MOL stock amounted to theft.[5]
"Theft" in the context of IRC section 165 is broadly construed.See Edwards v. Bromberg, 232 F2d 107, 110 (5th Cir 1956) ("[T]he word `theft' is * * * a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property * * * ."); Grotheus v. Comm'rof Internal Revenue, 84 TCM (CCH) 561, 568 (1992) *Page 7 
("The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful misappropriation of property of another, is of little importance provided it constitutes a theft."). For purposes of the IRC, whether a theft occurred depends upon the laws of the jurisdiction in which the loss occurred. Grotheus, 84 TCM (CCH) at 568. Therefore, taxpayer must at a minimum show that seizing the MOL stock was a "wrongful misappropriation" under the laws of Oregon.
Taxpayer has presented exhibits showing that in 1983 the Multnomah County Circuit Court entered a judgment against taxpayer and that the Multnomah County Sherriff's office seized the MOL stock from taxpayer pursuant to a writ of execution. (Ptf's Ex 32.) At trial, taxpayer affirmed that the MOL stock was seized and sold in partial satisfaction of the judgment against taxpayer. (Testimony of Bert Viecelli, Trial, Sept 21, 2010, 9:59.) However, taxpayer asserts that the seizure and sale of the MOL stock amounted to a theft because neither the department nor the Internal Revenue Service objected to his income tax returns for the tax years 1976 through 1980 (on which he claimed the $282,783.31 as expenses connected to his work on behalf of MOL) or conducted an audit once the Multnomah County Circuit Court determined those funds had been misappropriated. (Id. at 9:49.) There is no such definition of theft in Oregon. Therefore, the court holds that the seizure and sale of the MOL stock did not constitute theft.
Because the seizure and sale of the MOL stock was not a theft, the deduction taken by taxpayer in 1994 for the "theft" of the MOL stock is disallowed. Likewise, the net operating loss carryovers taken by taxpayer in the taxable years 1995 through 2000 are disallowed insofar as they arose from the deduction claimed by taxpayer in 1994. The department thus did not err in recalculating taxpayer's tax liability for the taxable years 1995 through 2000 and issuing notices *Page 8 
of deficiencies to taxpayer for the taxable years 1995, 1996, 1999 and 2000. Consequently, taxpayer is not entitled to refunds of the amounts paid pursuant to the notices of deficiencies.
2. Penalties under ORS 305.992
ORS 305.992(1) provides:
 "If any returns required to be filed * * * are not filed for three consecutive years by the due date (including extensions) of the return required for the third consecutive year, there shall be a penalty for each year of 100 percent of the tax liability determined after credits and prepayments for each such year."
Phrased another way, if a taxpayer fails to file required tax returns for three consecutive years on or before the date that the tax return for the third consecutive year becomes due, the department is required to levy a penalty equal to 100 percent of taxpayer's outstanding tax liability for each of the consecutive years for which taxpayer has failed to file a tax return.See OAR 150-305.992 (2009). This includes required returns that taxpayer fails to file in consecutive years after the third consecutive year. Id.
The uncontroverted evidence before the court shows that taxpayer failed to file his state income tax returns for seven consecutive years. (Ptf's Ex A at 1-30.) Nothing in the record shows that taxpayer obtained an extension for any of the years in question. Therefore, taxpayer is subject to the penalties prescribed by ORS 305.992.
 IV. CONCLUSION
Taxpayer is not entitled to personal income tax refunds for the tax years 1995 through 2000. The department correctly determined taxpayer's tax liability for the tax years 1995, 1996, 1997, 1998, 1999, and 2000. Now, therefore,
IT IS THE OPINION OF THIS COURT that the claims of taxpayer for refunds are denied; and
IT IS THE FURTHER OPINION OF THIS COURT that the counterclaims of the *Page 9 
department for deficiencies and penalties are granted.
Dated this ___ day of November, 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON NOVEMBER 29, 2010, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.
[2] Because ORS 314.415 explicitly bars any claim taxpayer may have to refunds of amounts paid before September 19, 2006, the decision of the court in subsection A of this opinion is entirely without reference to the merits of taxpayer's claim of a "casualty/theft loss" in 1994. The merits of taxpayer's claim to a "casualty/theft loss" in 1994 and the net operating loss carryovers taxpayer took in subsequent years are addressed in subsection B.
[3] IRC section 63(a) defines taxable income for taxpayers who elect to itemize their deductions as "gross income minus the deductions allowed by this chapter." IRC section 63(b) defines taxable income for taxpayers who do not elect to itemize their deductions as "adjusted gross income minus — (1) the standard deduction, and (2) the deduction for personal exemptions provided in section 151." All references to the IRC are to the 2008 edition.
[4] Taxpayer apparently characterizes the loss of the MOL stock as a "theft" that taxpayer "discovered" in 1994 in order to claim the loss as a deduction in 1994, many years after the events of 1983. IRC section 165(e) provides that losses from theft are sustained "during the tax year in which the taxpayer discovers such loss." Federal courts have interpreted "the taxable year in which the taxpayer discovers such loss" as the year that taxpayer realizes that a loss was a result of a theft. See, e.g.,Marine v. Commissioner, 92 TC 958, 976 (1989) ("It is the discovery of the theft loss, and not a mere claim to the other losses enumerated under section 165, that entitles the taxpayer to the theft loss deduction.").
[5] This is not to suggest that taxpayer would have prevailed had he characterized the seizure and sale of the MOL stock as a loss incurred in a trade or business or a loss incurred in a transaction entered into for profit. The deduction allowed for a loss of property is limited to the taxpayer's adjusted basis in the property. IRC 165(b). Taxpayer asserts that his basis in the MOL stock was $397,500, but there is no evidence in the record to support this assertion. Likewise, losses incurred in a trade or business or in a transaction entered into for profit are sustained in "the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Treas Reg § 1.165-1(d)(1). All of the transactions and "identifiable events" in the record involving taxpayer and the MOL stock occurred in late 1983 or early 1984. Nothing in the record indicates that net operating loss carryovers, if properly taken by taxpayer in 1983, would have been available to taxpayer in the years at issue. For all the court knows, any properly computed amount of loss would have been absorbed by income in the intervening years.